UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

———————————————————— x

| | |
|---|---|
| ANNE WHITE HAT, RAMON MEJÍA, KAREN SAVAGE, SHARON LAVIGNE, HARRY JOSEPH, KATHERINE AASLESTAD, PETER AASLESTAD, THEDA LARSON WRIGHT, ALBERTA LARSON STEVENS, JUDITH LARSON HERNANDEZ, RISE ST. JAMES, 350 NEW ORLEANS, and LOUISIANA BUCKET BRIGADE | Civil Action No. 19-cv-322-JWD-EWD |
| Plaintiffs, | Judge John W. deGravelles |
| v. | Magistrate Judge Erin Wilder-Doomes |
| JEFF LANDRY, in his official capacity as Attorney General of Louisiana; BO DUHÉ, in his official capacity as District Attorney of the 16th Judicial District Attorney's Office; RONALD J. THERIOT, in his official capacity as Sheriff of St. Martin Parish,, | |
| Defendant. | |

———————————————————— x

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT RONALD J. THERIOT'S MOTION TO DISMISS**

**Standing and *Younger* Abstention**

Plaintiffs submit this Memorandum of Law in opposition to Defendant Ronald J. Theriot's motion to dismiss for lack of standing and on the basis of the *Younger* abstention doctrine.[1] Dkt. 31-1 at 3-9. Defendant Duhé also moves to dismiss on these grounds. Dkt. 32-1 at 11-16. Defendant Landry moves to dismiss on standing but not *Younger*. Dkt. 30-1 at 10-12.

---

[1] For the convenience of the Court and parties, Plaintiffs offered on October 1, 2019, to seek leave to submit a combined memorandum of no more than 30 pages as opposed to three separate responses of no more than 10 pages each as provided in Local Rule 7(g). Defendant Landry's office indicated they would oppose such a motion. Plaintiffs' have thus organized their responses as follows: 1) Plaintiff's address the sovereign immunity and venue arguments of defendants in the response to Defendant Landry's motion to dismiss; 2) Plaintiffs address the standing and *Younger* arguments raised by all Defendants in this brief.; 3) Plaintiffs address the 12(b)(6) motions asserted by Defendants Duhé and Landry in the response to Duhé's Motion to Dismiss. To avoid duplication, Plaintiffs respectfully refer the Court to the Factual Background in their Opposition to Defendant Landry's Motion to Dismiss for a general, and brief, recitation of facts, some of which are repeated herein where relevant.

1

Plaintiffs therefore respond to all of their arguments herein. As shown below, all Plaintiffs have standing to challenge La. R.S. 14:61 and there are no state court criminal proceedings that would bar adjudication of these claims under *Younger*.

## LAW AND ARGUMENT

### I. Each of the Plaintiffs Has Standing to Challenge the Critical Infrastructure Law.

Plaintiffs present a facial and as-applied challenge to La. R.S. 14:61, as amended, that it violates the Due Process clause and First Amendment because it is vague and overbroad, violates the rights to speech, of the press, and assembly, and targets a particular viewpoint for harsher punishment. To satisfy the constitutional requirement of standing, Plaintiffs must demonstrate that (1) they have suffered an "injury in fact," (2) that the injury is "fairly traceable to the challenged action of the defendant," and (3) "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

A plaintiff satisfies this requirement when they are arrested under the challenged statute, even if prosecution has been disavowed. *Seals v. McBee*, 898 F.3d 587, 592-3 (2018). Those Plaintiffs who have not yet been arrested "need not first expose [themselves] to actual arrest or prosecution" if "they have alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbit v. United Farmworkers Nat. Union*, 442 U.S. 289, 298-301 (1979). The challenged statute need only "arguably" proscribe plaintiff's intended conduct. *281 Care Comm. v. Arneson*, 638 F.3d 621, 630 (8th Cir. 2011); *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003). And "the improbability of successful prosecution" is irrelevant, as "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the

prospects of its success or failure." *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965). This is particularly so in a vagueness challenge, where plaintiffs cannot know if their conduct is proscribed, and if "the provision were truly vague, [plaintiffs] should not be expected to pursue their collective activities at their peril." *Babbitt*, 442 U.S. at 303. Such a plaintiff "suffers from an 'ongoing injury resulting from the statute's chilling effect on [their] desire to exercise [their] First Amendment rights.'" *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003).

Plaintiffs White Hat, Mejía, and Savage ("Arrestee Plaintiffs") were arrested under the Statute, are still "legally subject to prosecution," and have standing to challenge it, even if prosecution is disavowed. *Seals v. McBee*, 898 F.3d at 592. Indeed, Defendants Landry and Duhé concede these Plaintiffs have standing. Dkt. 30-1 at 10 (Landry) ("all Plaintiffs other than Arrestee Plaintiffs should be dismissed"); dkt. 32-1 (Duhé) (challenging standing of all other plaintiffs and moving to dismiss "Arrestee Plaintiffs" on *Younger* abstention grounds).

In August and September of 2018, White Hat, Mejía, and Savage were arrested by Defendant Theriot's deputies for unauthorized entry of a critical infrastructure on property co-owned by five of the Landowner Plaintiffs while expressing opposition to pipelines (White Hat and Mejía) and reporting on the events (Savage) two weeks after they allegedly violated the statute. Dkt. 1, ¶¶ 65-75, 85-96. Although the pipeline company was itself trespassing on that property, and there was no legally cognizable right-of-way or critical infrastructure there, the company was in contact with law enforcement requesting Plaintiffs' removal from the property which led to these arrests. Dkt. 1 at ¶¶ 69-75, 81-84; Dkt. 30-7 (Final Judgment of 16th Judicial District Court finding company committed trespass); dkt. 30-15 (Authorization for Removal of Trespassers). White Hat, Mejía, and Savage, may still be subject to prosecution as the 38 acres, or some portion of it, has been deemed by law enforcement officials, including Defendants, to fit

the vague and overbroad definition of critical infrastructure in the Statute, La. R.S. 16:41(A)(3), (B)(1) and (B)(3), and the Statute is unclear as to who can revoke permission from those who have lawfully entered. La. R.S. 16:41(A)(3). *See also*, Dkt. 1, ¶¶ 56-64. The four-year statute of limitations has not run. La.C.Cr.P. Art. 572(A)(2). By virtue of their arrests, and the fact that they are still legally subject to prosecution, those Plaintiffs have standing.

Through their arrests, the Plaintiffs' rights under the First Amendment have been violated. Additionally, Plaintiff Savage, a journalist, was arrested while covering the events on that property, allegedly in violation of the Statute, and her right to freedom of press was abridged. *See, e.g., Marsh v. State of Ala.*, 326 U.S. 501, 504 (1946) (individual's right to freedom of press violated where she was arrested and charged under statute making it a crime to "enter or remain on the premises of another after having been warned not to do so" while distributing religious flyers on a sidewalk in company town). Even if the statute was constitutionally applied to these Plaintiffs – which it was not – they can still bring a facial challenge based on the First Amendment impacts it has on parties not before the court. *Dombrowski*, 380 U.S. at 486-7. This "exception to the usual rules governing standing" reflects "the transcendent value to all society" of free expression, and the "danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." *Id*.

Plaintiffs Lavigne, Joseph, RISE St. James, 350 New Orleans, and Louisiana Bucket Brigade clearly have standing because they assert that they are interested "in engaging in a course of conduct arguably affected with a constitutional interest" but for which they may be penalized. *Babbit*, 442 U.S. at 298, 303. Those Plaintiffs have "previously engaged in" marches, protests, press conferences, filming on location, and other advocacy in areas where there are

4

pipelines, and have alleged that they "will in the future engage in" such assembly. *Babbit,* 442 U.S. at 303; Dkt. 1, ¶¶ 22, 26-29, 97-100, 102, 106. The Statute empowers "authorized persons" to arbitrarily decide to proscribe otherwise lawful presence "upon or in the premises of" a pipeline – this could be a public park, sidewalk, or waterway. La. R.S. 14:61(A)(3). Theriot's deputies have already used that power in an arbitrary and discriminatory manner. Dkt. 1, ¶¶ 65-79, 82-84. Because the law is vague and overbroad, Plaintiffs have no way of knowing for sure, but have a "palpable basis for believing" that they will also be proscribed from lawfully assembling to express opposition to, or report on, pipeline projects on public sidewalks, parks, waterways, or private property that are "upon or in the premises of" pipelines.[2] *Babbitt*, 442 U.S. at 304. *See also, Holder v. Humanitarian Law Project,* 561 U.S. 1, 16 (2010) (considering enforcement of challenged statute against others as a factor to determine whether there is a credible threat of prosecution).

Landowner Plaintiffs Larson Wright, Larson Stevens, Larson Hernandez, and the Aaslestads are also injured because there is a credible threat that the statute will be applied against them or their guests on their own 38 acres of property -- because it already has been. Dkt. 1 at ¶¶ 65-84. The power given by the Statute to "authorized persons" who can proscribe assembly "upon on in the premises of" a pipeline has been used several times on those 38 acres against individuals who had these co-owners' permission to be on that property – again when the "pipeline" was not there legally and the trespassing company was deemed an "authorized person." *Id..* and ¶86.[3] The Bayou Bridge Pipeline now has a right of way on that property,

---

[2] Defendant Landry argues that "no Plaintiff alleges an intent to protest on private property," Dkt. 30-1 at 9, but does not explain why this is relevant: the Statute is not by any of its terms limited to private property, and in fact has been used to arrest people on public, navigable waters. *See* Dkt. 1 at ¶76.

[3] While other co-owners of that property could have refused permission for Landowners' guests to be present, "express, legal, or implied authority to be in the movable or on the immovable property" is an affirmative defense under the criminal trespass statute. La. R.S. 14:63(D). The guests were arrested and removed under the critical infrastructure statute, which does not include such an affirmative defense.

which makes the entire tract (according to the Defendant Landry, dkt. 30-1 at 14), or at least some unknown portion of it, a critical infrastructure under the Statute. But the landowners intend to continue to advocate against the fossil fuel industry, including on their property, and to allow guests to do the same. Dkt. 1, ¶¶ 94-96. Therefore, there is a credible threat that they could be liable or their guests will again be arrested and charged under that Statute and prosecuted. *Babbit,* 442 U.S. at 301-3.

The cases cited by Defendant Theriot are not to the contrary. Dkt. 31-1 at 5-8. In *O'Shea v. Littleton,* plaintiffs did not challenge any statute as unconstitutional, or allege that unconstitutional criminal statutes were being employed to deter constitutionally protected conduct; instead, plaintiffs requested injunctive relief for a pattern and practice of racial discrimination in the criminal legal system, which plaintiffs might be subject to if in the future they were arrested and prosecuted for violating an unchallenged criminal law, which they did not intend to do. 414 U.S. 488, 491-6 (1974). Similarly, in *City of Los Angeles v. Lyons,* the plaintiff requested injunctive relief for the Los Angeles Police Department's practice of using chokeholds, which plaintiff might be subject to if in the future he was stopped again by a police officer who decided to use a chokehold. 461 U.S. 95, 110 (1983). In contrast, Plaintiffs here challenge the constitutionality of a statute and its deterrent chilling effect on constitutionally protected conduct, and they have specifically alleged an intention to engage in conduct that can be proscribed by the Statute: expressing opposition to pipelines while assembled "upon or in the premises of" a pipeline. Dkt. 1, ¶¶ 22, 26- 29, 100, 102, 106. The allegations in the complaint and the exhibits offered by Defendant Landry are evidence that law enforcement has in fact arbitrarily and discriminatorily applied the Statute against such conduct. Dkt. 1, ¶¶65-76; Dkts. 30-7, 30-15. In that sense, this case is far more like *Steffel v. Thompson*, in which the Court

found that the plaintiff had standing to challenge a statute as applied to him where he alleged an intent to engage in conduct that was arguably proscribed by the statute, was threatened with arrest for engaging in that conduct, and his companion was prosecuted under the statute for the same conduct. 415 U.S. 452, 459 (1974).

The carveouts regarding lawful assembly, lawful commercial and recreational activities, and the rights of ownership in La. R.S. 14:61(D) merely restate "already-existing constitutional limits on any government activity." *United Food & Commercial Workers Local 99 v. Bennett*, 934 F. Supp. 2d 1167, 1207 (D. Ariz. 2013) (savings clause did not cure statute's serious overbreadth and vagueness defects). *See also, CISPES v. F.B.I.*, 770 F.2d 468, 474 (5th Cir. 1985) (such clauses "cannot substantively operate to save an otherwise invalid statute, since [they are] a mere restatement of well-settled constitutional restrictions on the construction of statutory enactments"). Defendant Landry cites *Morrison v. Board of Education of Boyd County* for the general proposition that "in the absence of threats or actual punishment for protected speech, the presence of the carveout [leaves] plaintiffs without a justiciable injury." Dkt. 30-1 at 9. However, in *Morrison*, the Board of Education had not taken any concrete action that gave rise to a credible threat of prosecution. 521 F.3d 602, 610 (6th Cir. 2008). Here, in just one year, Defendant Theriot's deputies have taken concrete action: they have used the Statute in an arbitrary and discriminatory manner to proscribe assembly of individuals reporting on or advocating against pipelines on public and private property. Dkt. 1, at ¶¶65-76.[4]

---

[4] On page 10 of his brief, Defendant Landry argues that Arrestee Plaintiffs were not arrested for activities protected by the carveouts, citing to paragraph 11 of the Complaint, but omitting a crucial part of that paragraph:

> There have been more than a dozen arrests of people peacefully protesting and a journalist covering the events who were charged with felonies for acts which would have been charged as misdemeanor trespass before August 1, 2018 – *and only if in fact those arrested did not have permission or a legal right to remain on the property in the first place.* Dkt. 30-1 at 10.

7

Finally, Defendant Theriot argues that Plaintiffs have not satisfied the redressability prong as it relates to him. Dkt. 31-1 at 4. But Defendant Theriot's deputies have arbitrarily and discriminatorily enforced the Statute in St. Martin Parish leading to arrests and criminal charges that are still pending. Dkt. 1, ¶¶73-76, 80. If charges are accepted, he and his employees may be witnesses and conduct further investigations. The Landowners have property in St. Martin Parish where this statute was arbitrarily and discriminatorily enforced, and they fear Defendant Theriot's deputies will continue to do so. Dkt. 1, ¶¶66-75, 94-96.

## II. Plaintiffs Arrested and Charged Under the Challenged Law Are Not Barred by the *Younger* Abstention Doctrine.

Defendants Landry and Duhé concede that Plaintiffs White Hat, Mejía, and Savage have standing to challenge the law as result of their arrests and pending charges. Dkt. 30-1 at 10 (Landry) ("all Plaintiffs other than Arrestee Plaintiffs should be dismissed"); dkt. 32-1 (Duhé) (challenging standing of all other plaintiffs and moving to dismiss "Arrestee Plaintiffs" on *Younger* abstention grounds). Defendants differ as to whether the Arrestee Plaintiffs' claims should proceed in light of the *Younger* Abstention doctrine.

Defendants Duhé and Theriot, but not Defendant Landry, wrongly assert that state court criminal proceedings have begun simply because Plaintiffs were arrested, and that this Court should abstain. Dkt. 31-1 at 7-9; dkt. 32-1 at 12-15. But there are no pending state court criminal or judicial proceedings. *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 925 (1975); *Seals v. McBee*, 898 F.3d at 591. Plaintiffs White Hat, Meijia, and Savage were arrested over a year ago by Sheriff Theriot's employees and charges still have not been accepted by District Attorney Duhé's office. Dkt 1 at ¶¶80, 85-93; *see also,* dkt. 32-1 at 14-15. Despite this, Defendants Theriot and

---

But in fact, Arrestee Plaintiffs had permission to be on the 38 acres of property and would have an affirmative defense to a charge of misdemeanor trespass, La. R.S. 14:63(D), whereas, La. R.S. 14:61 does not contain such a provision.

Duhé attempt to use *Doran v. Salem Inn, Inc., supra,* as support for their argument that a state court proceeding exists. In *Doran*, the day after a federal lawsuit was filed, a plaintiff was served with a summons, which, as summonses do, summoned the plaintiff to state court to answer to charges of violating the ordinance he was challenging in the federal suit. The Supreme Court held that because state court proceedings had officially begun with respect to that plaintiff and the federal litigation was in an "embryonic stage," *Younger* considerations warranted abstention. *Id.* at 929 (the court however allowed remaining plaintiffs' claims to proceed).

Theriot and Duhé wrongly assert that the arrests in this matter equate with the summons issued in *Doran*. Theriot goes so far as to say that "[t]here can be no meaningful difference between the service of the summons by the officers in *Doran* and the arrest by the officers in the present case" and "[f]unctionally, they are the same thing." Dkt. 31-1 at 8. But Theriot only points to La.C.Cr.P. art. 211 as support, which allows for a summons to be issued instead of an arrest in certain circumstances.[5] Defendants ignore the essential nature of what a summons is. As defined in La. C.Cr.P. art. 208, a summons is "an order in writing, issued and signed by a magistrate or a peace officer in the name of the state, stating the offense charged and the name of the alleged offender, and *commanding him to appear before the court designated in the summons at the time and place stated in the summons*." (emphasis added).

Defendant Landry rightly recognizes that such proceedings have not begun for purposes of *Younger*, but wrongly believes that if they ever do commence this Court should abstain. Dkt. 30-1 at 12. However, as Defendant Duhé points out, a federal court may choose not to abstain

---

[5] The circumstances are: when it is "lawful for a peace officer to arrest a person without a warrant for a *misdemeanor*, or for a *felony charge of theft or illegal possession of stolen things*" when the value is more than $500 but less than $1,000, La.C.Cr.P. art. 211(A); for issuing worthless checks, La.C.Cr.P. Art. 211(b); the offense of driving without a license when officer determines a valid license exists and is not suspended or revoked, La.C.Cr.P. Art. 211(C); and in other cases of driving without a license in the officer's discretion, La.C.Cr.P. Art. 211(D).

9

when a prosecution is taken in bad faith, *i.e.* when state officials proceed "without hope of obtaining a valid conviction." Dkt. 32-1 at 14-15 citing *Perez v. Ledesma*, 401 U.S. 82, 85, (1971). There are numerous allegations in the complaint, with more support in the exhibits submitted by Defendant Landry, that any prosecution of White Hat, Mejía, and Savage, under this statute would necessarily be undertaken in bad faith, without the hope of a valid conviction. *See, e.g.,* Dkt. 1 at ¶ 81-84 (company was illegally trespassing and constructing on the property and no valid, legal right-of-way when plaintiffs arrested); Dkt. 30-15 (the trespassing pipeline company was the "authorized person" forbidding others from being on the property).

## CONCLUSION

For the foregoing reasons, the motions to dismiss on the basis of standing and *Younger* should be denied.

Date: October 7, 2019                               Respectfully submitted,


                                                    s/Pamela C. Spees
WILLIAM QUIGLEY                                     PAMELA C. SPEES
La. Bar Roll No. 7769                               La. Bar Roll No. 29679
Professor of Law                                    ASTHA SHARMA POKHAREL
Loyola University College of Law                    (Admitted *Pro Hac Vice*)
7214 St. Charles Avenue                             Center for Constitutional Rights
New Orleans, LA 70118                               666 Broadway, 7th Floor
Tel. (504) 710-3074                                 New York, NY 10012
Fax (504) 861-5440                                  Tel and Fax: (212) 614-6431
quigley77@gmail.com                                 pspees@ccrjustice.org
                                                    asharmapokharel@ccrjustice.org

CERTIFICATE OF SERVICE

      I hereby certify that on October 7, 2019, a copy of the foregoing was filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record unless indicated otherwise.

                                          s/Pamela C. Spees
                                          Pamela C. Spees