# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

ANNE WHITE HAT ET AL                      CASE NO.  6:20-CV-00983

VERSUS                                    JUDGE ROBERT R. SUMMERHAYS

JEFF LANDRY ET AL                         MAGISTRATE JUDGE CAROL B. WHITEHURST

## MEMORANDUM RULING

The present matters before the Court are the Re-Urged Motion to Dismiss and Motion to Dismiss for Mootness [ECF No. 62] filed by St. Martin Parish Sheriff Ronald Theriot, and the Motion for Reconsideration of the Ruling and Order Dated July 30, 2020 and to Grant the Motion to Dismiss Filed on Behalf of M. Bofill Duhé in his Official Capacity as District Attorney for the 16th Judicial District (the "16th JDC), State of Louisiana [ECF No. 64]. Theriot and Duhé (collectively, "Defendants") request that the First Amendment claims of plaintiffs Anne White Hat, Ramon Mejía, Karen Savage, Katherine Aaslestad, Peter Aaslestad, Theda Larson Wright, Alberta Larson Stevens, Judith Larson Hernandez, RISE St. James, 350 New Orleans, the Louisiana Bucket Brigade, Sharon Lavigne, and Pastor Harry Joseph (collectively, "Plaintiffs") be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants allege that Plaintiffs lack Article III standing, that the claims against Sheriff Theriot are moot, that the Court must abstain under *Younger v. Harris*,[1] and that Plaintiffs have failed to state legally cognizable claims.

---

[1] 401 U.S. 37, 44 (1971)

# I.
## BACKGROUND

### A.  Overview.

This case originated with the arrest of plaintiffs Anne White Hat, Ramon Mejía, and Karen Savage ("Arrestee Plaintiffs") during a 2018 protest in St. Martin Parish involving the Bayou Bridge Pipeline The Bayou Bridge Pipeline runs 162.5 miles from Lake Charles to St. James through hundreds of bodies of water, including the Atchafalaya Basin and Bayou LaFourche, which is the source of drinking water for the surrounding communities.[2] The construction of the Bayou Bridge Pipeline was controversial and attracted opposition from affected communities, indigenous leaders, environmental activists, crawfish farmers, and landowners voicing opposition.[3] Various state and federal lawsuits were filed opposing the construction of the pipeline.[4]

In the present case, the Arrestee Plaintiffs were protesting on land in St. Martin Parish with the permission of the landowners: Katherine and Peter Aalestad, Theda Larson Wright, Alberta Larson Stevens, and Judith Larson Hernandez (the "Landowner Plaintiffs"). Nevertheless, they were arrested for "unauthorized entry of critical infrastructure" under La. R.S. 14:61 because, although protesting on private property with the landowners' permission, they were protesting in close proximity to a pipeline (the Bayou Bridge Pipeline) allegedly protected by that statute. The Arrestee Plaintiffs were ultimately released but, more than two years after their arrest, they have not been formally charged, indicted, or otherwise prosecuted. If commenced, any such prosecution falls within the jurisdiction of the district attorney for the 16th JDC, defendant M. Bofill Duhé.

---

[2] ECF No. 1 at ¶8.
[3] ECF No. 1 at ¶9.
[4] *Id.*

Duhé has not disclaimed prosecution but there are no allegations that a charging decision has been made.

### B.  The Challenged Statute.

Plaintiffs mount a facial and "as applied" challenge to the constitutionality of La. R.S. 14:61—the statute that was allegedly the basis for their 2018 arrest. In 2018, the Louisiana Mid-Continent Oil and Gas Association drafted and proposed an amendment to La. R.S. 14:61, which was enacted into law on August 1, 2018[5] (the "Amended Statute"). The Amended Statute provides:

§61. Unauthorized entry of a critical infrastructure

A. Unauthorized entry of a critical infrastructure is any of the following:

(1) The intentional entry by a person without authority into any structure or onto any premises, belonging to another, that constitutes in whole or in part a critical infrastructure that is completely enclosed by any type of physical barrier.

(2) The use or attempted use of fraudulent documents for identification purposes to enter a critical infrastructure.

(3) Remaining upon or in the premises of a critical infrastructure after having been forbidden to do so, either orally or in writing, by any owner, lessee, or custodian of the property or by any other authorized person.

(4) The intentional entry into a restricted area of a critical infrastructure which is marked as a restricted or limited access area that is completely enclosed by any type of physical barrier when the person is not authorized to enter that restricted or limited access area.

B. For the purposes of this Section, the following words shall have the following meanings:

(1) "Critical infrastructure" means any and all structures, equipment, or other immovable or movable property located within or upon chemical manufacturing facilities, refineries, electrical power generating facilities, electrical transmission substations and distribution substations, water intake structures and water treatment facilities, natural gas transmission compressor stations, liquified natural gas (LNG) terminals and storage facilities, natural gas and hydrocarbon storage facilities, transportation facilities, such as ports, railroad switching yards, pipelines, and

---

[5] *Id.*

trucking terminals, or any site where the construction or improvement of any facility or structure referenced in this Section is occurring.

(2) "Fraudulent documents for identification purposes" means documents which are presented as being bona fide documents which provide personal identification information but which are, in fact, false, forged, altered, or counterfeit.

(3) "Pipeline" means flow, transmission, distribution, or gathering lines, regardless of size or length, which transmit or transport oil, gas, petrochemicals, minerals, or water in a solid, liquid, or gaseous state.

C. Whoever commits the crime of unauthorized entry of a critical infrastructure shall be imprisoned with or without hard labor for not more than five years, fined not more than one thousand dollars, or both.

D. Nothing in this Section shall be construed to apply to or prevent the following:

(1) Lawful assembly and peaceful and orderly petition, picketing, or demonstration for the redress of grievances or to express ideas or views regarding legitimate matters of public interest, including but not limited to any labor dispute between any employer and its employee or position protected by the United States Constitution or the Constitution of Louisiana.

(2) Lawful commercial or recreational activities conducted in the open or unconfined areas around a pipeline, including but not limited to fishing, hunting, boating, and birdwatching.

(3) Nothing in this Section shall be construed to prevent the owner of an immovable from exercising right of ownership, including use, enjoyment, and disposition within the limits and under the conditions established by law.[6]

Plaintiffs allege the Amended Statute defines Louisiana's 125,000-mile network of pipelines as critical infrastructure.[7] Plaintiffs allege that the Amended Statute:

is unconstitutional on its face and as applied because: 1) it is vague as it does not provide adequate notice to plaintiffs and others, as well as state actors who must enforce the law, what conduct is prohibited and where, and allows for arbitrary and discriminatory enforcement; 2) it is overbroad and has the effect of chilling constitutionally protected speech or expression; and 3) targets speech and expressive conduct with a particular viewpoint for harsher punishment.[8]

---

[6] ECF No. 1 at ¶54.
[7] *Id.*
[8] ECF No. 1 at ¶2.

Prior to the enactment of the Amended Statute, critical infrastructure included "facilities like refineries, chemical manufacturing facilities, and water treatment plants which occupy visible and discrete land areas often completely enclosed by physical barriers and/or clearly demarcated by signs."[9] Therefore, Plaintiffs allege that the prior version of the statute "gave notice to those who would enter such facilities without authorization, or remain after being forbidden, that they were on specially designated and protected property."[10] Under the Amended Statute, however, critical infrastructure now includes 125,000 miles of pipelines, which run through private and public spaces and are not visible or clearly marked.[11] Plaintiffs contend that there is no notice identifying what area around a pipeline is considered a part of the pipeline or "critical infrastructure."[12] Plaintiffs also contend that the Amended Statute provides no notice as to a private landowner's right to occupy and use the portions of his or her property through or under which a pipeline runs, and whether pipelines that run unmarked through public property or navigable waterways are subject to the statute.[13]

Plaintiffs also contend that the Amended Statute does not define who can revoke permission from those who have lawfully entered the vicinity of a pipeline or "critical infrastructure."[14] They also argue that the Amended Statute does not provide guidance to law enforcement officers on how or where to enforce the restrictions imposed by the statute and point out that the Amended Statute does not require that a trespasser have intent to do damage, cause harm, or otherwise commit an act of violence or criminal offense.[15] The Amended Statute also

---

[9] ECF No. 1 at ¶3.
[10] *Id.*
[11] ECF No. 1 at ¶¶4-5.
[12] ECF No. 1 at ¶58.
[13] ECF No. 1 at ¶¶60-62.
[14] ECF No. 1 at ¶¶56, 59.
[15] ECF No. 1 at ¶¶56-57.

increases the penalty for violating the statute from a misdemeanor charge of trespass to a felony charge of five years imprisonment and up to a $1,000.00 fine.[16]

### C.  Commencement of the Case.

This case was initially filed in the United States District Court for the Middle District of Louisiana by various plaintiffs against Louisiana Attorney General Jeff Landry, Sheriff Ronald Theriot and District Attorney M. Bofill Duhé. The action was brought pursuant to 42 U.S.C. §§ 1983 and 1988 alleging that the Amended Statute is facially unconstitutional and unconstitutional as applied.[17] Each of the three defendants filed motions to dismiss. On July 30, 2020, District Judge John deGravelles issued his Ruling and Order in which he dismissed claims against Attorney General Jeff Landry, granted the alternative relief sought by the other defendants to transfer venue to this court and denied the motions in all other respects.

Plaintiffs requested reconsideration of the ruling dismissing claims against Jeff Landry,[18] which the Court denied in a separate order. Defendants Duhé and Theriot re-urge their motions to dismiss on the basis that Judge deGravelles did not state any grounds for denying the motions in his Ruling and Order.

### D.  Additional Plaintiffs.

In addition to the three Arrestee Plaintiffs, the plaintiffs in this case include three environmental justice advocacy groups and two individuals affiliated with those groups: RISE St. James, 350 New Orleans, the Louisiana Bucket Brigade, Sharon Lavigne (the founder and president of RISE St. James),[19] and Harry Joseph (pastor of Mount Triumph Baptist Church and a

---

[16] ECF No. 1 at ¶7.
[17] ECF No. 1 at 1.
[18] ECF No. 66.
[19] *Id.*

member of RISE St. James).[20]  These plaintiffs are referred to collectively as the "Organization Plaintiffs." Finally, the case includes the Landowner Plaintiffs. These plaintiffs are St. Martin Parish landowners who own undivided interests in property over which the Bayou Bridge Pipeline crosses.[21] This property was the site of the protests by the Arrestee Plaintiffs and their arrest.

## II.
### STANDARD OF REVIEW

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge  the subject matter jurisdiction  of  a  federal  court  to  hear  a  case.[22]  A  lack of subject matter jurisdiction may be found in "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[23]  The party asserting federal court subject matter jurisdiction bears the burden of proof that jurisdiction exists.[24]

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a complaint fails to state a legally cognizable claim.[25] In other words, a Rule 12(b)(6) motion "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."[26] When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded  facts  as  true,  viewing  them  in  the  light  most  favorable  to  the  plaintiff."[27]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

---

[20] ECF No. 1 at ¶26.
[21] ECF No. 1 at ¶23.
[22] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id*. at 161-62
[27] *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[28] Moreover, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'"[29] The requirement that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.[30] In considering a Rule 12(b)(6) motion, a court must limit itself to the contents of the complaint, including documents attached to or incorporated by the complaint, and matters of which judicial notice may be taken, including matters of public record.[31]

### III.
### THE MOTIONS TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6)

Defendants Duhé and Theriot originally filed motions to dismiss under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure before Judge deGravelles challenging Plaintiffs' standing to sue and arguing that Plaintiffs had failed to state claims upon which relief could be granted. Judge deGravelles denied these motions at the same time he granted the motion to transfer venue to the Western District of Louisiana. This ruling did not specifically address the merits of the Defendants' motions to dismiss. The Court agrees with defendants that Judge deGravelles did not deny the motions to dismiss on the merits but instead denied these motions as a result of his decision to transfer the venue to this Court. Under these circumstances, it is not unusual for a transferor court to reserve merits issues for the transferee court to decide. Accordingly, the Court views Judge deGravelles' ruling denying the motions to dismiss as a denial without prejudice to the Defendants re-urging the motions before this Court. The Court will therefore DENY

---

[28] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations, quotation marks, and brackets omitted).

[29] *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868, (2009) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

[31] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017-18 (5th Cir. 1996); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

Defendants' request to reconsider Judge de Gravelles' ruling but will consider Defendants' "re-urged" motions on the merits. Following the venue transfer, Sheriff Theriot urged mootness as an additional ground for dismissal under Rule 12(b)(1).

### A. Standing.

Defendants Duhé and Theriot first challenge Plaintiffs' standing to bring the claims asserted in their Complaint. The plaintiffs in this case fall into three groups for purposes of standing: the Arrestee Plaintiffs (White Hat, Savage, and Mejía), the Organization Plaintiffs (Pastor Joseph, Lavigne, RISE St. James, 350 New Orleans, and the Louisiana Bucket Brigade),[32] and the Landowner Plaintiffs (Kathryn and Peter Aaslestad, Wright, Stevens, and Hernandez).[33] Defendant Duhé does not challenge the standing of the Arrestee Plaintiffs but challenges the standing of the Organization Plaintiffs and Landowner Plaintiffs. Defendant Theriot, on the other hand, challenges the standing of all of the plaintiffs, including the Arrestee Plaintiffs.

### 1. The Relevant Standard.

Jurisdiction under Article III of the Constitution requires the presence of a "case or controversy" among the parties to a federal lawsuit.[34] Standing is one aspect of this case-or-controversy requirement.[35] Standing identifies "those disputes which are appropriately resolved through the judicial process,"[36] and "serves to prevent the judicial process from being used to usurp the powers of the political branches."[37] Article III standing requires, at a minimum, that the plaintiff show (1) an "injury in fact," (2) a "causal connection between the injury and the conduct

---

[32] The Court will refer to these community organizations as the "Organization Plaintiffs."
[33] Plaintiff Lavigne alleges that she is also a landowner, but her land is located in St. James Parish was was not apparently the site of the Arrestee Plaintiffs' protest. [ECF No. 1 at ¶22].
[34] U.S. Const. amend. III, § 2; *Spokeo, Inc. v. Robins*, ___ U.S.___, 136 S. Ct. 1540, 1549 (2016).
[35] *Spokeo, Inc.*, 136 S. Ct. at 1549 ("[T]he doctrine of standing derives from [Article III's] case-or-controversy requirement….")
[36] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[37] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

complained of," and (3) a showing that the injury will likely "be redressed by a favorable decision."[38] The injury-in-fact requirement ensures that the plaintiff has a "personal stake in the outcome of the controversy" by requiring some showing that the plaintiff has "suffered or [is] imminently threatened with a concrete and particularized 'injury in fact.'"[39] The causation element of standing requires that this injury be "fairly traceable to the defendant's allegedly unlawful conduct,"[40] while "redressability" requires a showing that the injury is likely to be redressed by the relief requested in the complaint.[41] While courts have adopted various "prudential" standing doctrines, these prudential limits on standing are often relaxed where, as here, a plaintiff alleges violations of the First Amendment.[42] Even so, First Amendment plaintiffs must still satisfy the core requirements for Article III standing—injury, causation, and redressability.[43] The Supreme Court has referred to these core requirements as "the irreducible constitutional minimum of standing."[44]

    2. Standing of The Arrestee Plaintiffs.

Defendant Theriot alleges that the Arrestee Plaintiffs lack standing because they "do not allege any immediate plans to launch additional protests or demonstrations in St. Martin Parish" and have not "identified any encounter with any St. Martin Parish Sheriff's Deputy, nor any encounter with Sheriff Theriot himself."[45] The Arrestee Plaintiffs counter that their arrest and

---

[38] *Lujan*, 504 U.S. at 560–561.
[39] *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 125 (2014); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted); *Clapper*, 568 U.S. at 409 (injury must be "concrete, particularized, and actual or imminent ….") (quoting *Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).
[40] *Allen v. Wright*, 468 U.S. 737, 751 (1984).
[41] *Id.*
[42] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).
[43] *Henderson v. Stalder*, 287 F.3d 374, 385 n. 4 (5th Cir.2002) ("Although various prudential standing principles have been relaxed in some First Amendment cases, this relaxation does not eliminate the distinct and independent requirement of Article III that the dispute between the parties must amount to a case or controversy.")
[44] *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130.
[45] Sheriff Theriot's Re-urged Motion to Dismiss and Motion to Dismiss for Mootness [ECF No. 62-1] at 4.

possible prosecution under the La. R.S. 14:61 is sufficient for Article III standing. They further argue that the prospect of prosecution under this act has a "chilling effect" on future efforts to protest the Bayou Bridge Pipeline on the Landowner Plaintiffs' property in St. Martin Parish.

Here, the Arrestee Plaintiffs allege that they were arrested and are still under the threat of prosecution for violating La. R.S. 14:61 even though they have not been formally charged for those violations.  In *Seals v. McBee*, the plaintiff was arrested for allegedly threatening a public official under La. R.S. 14:122.[46]  The plaintiff, however, was not formally charged and the district attorney disavowed prosecution.  The Fifth Circuit nevertheless concluded that the plaintiff had adequately demonstrated an injury in fact because the plaintiff "has a concrete stake in this litigation because the District Attorney can change his mind and prosecute him."[47] According to the court "the specter of prosecution for violating a potentially unconstitutional law" with prosecution hanging over the plaintiff's head demonstrated an injury that was concrete, particularized, and actual or imminent.[48]

The Arrestee Plaintiffs' injury allegations here are stronger than the allegations in *Seals*— not only have they have been arrested by St. Martin Parish Sheriff's Deputies for violating La. R.S. 14:61, there is no showing that Defendants have disavowed prosecution. Moreover, even if defendant Duhé disavows prosecution, the Arrestee Plaintiffs would be subject to the threat of prosecution until September 2022 under the four-year statute of limitations applicable to the type of felony offense created by La. R.S. 14:61.[49]

The Arrestee Plaintiffs also have stated an injury based on their allegation that Defendants' enforcement of La. R.S. 14:61 has a chilling effect on future protests directed toward the Bayou Bridge Pipeline.  The Arrestee Plaintiffs allege that they would participate in future protests of the

---

[46] 898 F.3d at 593.
[47] *Seals*, 898 F.3d at 593.
[48] *Id.*
[49] La.C.Cr.P. Art. 572(A)(2).

Bayou Bridge Pipeline but fear a felony prosecution under La. R.S. 14:61 given their prior arrests. In *Susan B. Anthony List v. Dreihaus*, the Supreme Court held that a plaintiff had standing to challenge a state law that criminalized false statements made against political actors on the grounds that the statue was unconstitutionally overbroad and had a chilling effect on the exercise of constitutionally protected speech.[50] There, the Court concluded that the plaintiff's intended speech was "arguably proscribed" by the law and that there was a substantial threat that the challenged statute would be enforced in the future given the "history of past enforcement."[51] In the present case, there is a similar threat of future enforcement: the Arrestee Plaintiffs have alleged that they desire to continue their protests over the Bayou Bridge Pipeline, that their prior protest activities resulted in multiple arrests, and that they have curtailed their activities because of their fear of prosecution under the Amended Statute.  These alleged facts demonstrate a sufficient injury in fact for purposes of standing under Article III.

Finally, the Arrestee Plaintiffs have adequately alleged causation and redressability.  To the extent that the Arrestee Plaintiffs' injury flows from the enforcement of and prosecution under La. R.S. 14:61, their injury is "fairly tracible" to the actions of Defendants and can be redressed by declaratory and injunctive relief precluding enforcement of the statute. Specifically, the Arrestee Plaintiffs have pled that they were arrested—in some cases twice—by deputies from the St. Martin Parish Sheriff's Office.  Also, as the District Attorney for the 16th JDC, defendant Duhé has enforcement authority over La. R.S. 14:61 as well as decision-making authority over the prosecution of the Arrestee Plaintiffs for past alleged violations of the Amended Statute. The injunctive and declaratory relief requested by Plaintiffs would eliminate the threat of future arrests

---

[50] 573 U.S. 149, 161-64 (2014).
[51] *Id.* at 164.

and prosecution. In sum, the Arrestee Plaintiffs have adequately demonstrated standing based on the allegations in the Complaint.

      3. <u>Standing of the Organization Plaintiffs</u>.

      Defendants next challenge the standing of the Organization Plaintiffs and the individual plaintiffs affiliated with those organizations. The standing allegations for these plaintiffs differ from the allegations supporting standing for the Arrestee Plaintiffs.  Unlike the Arrestee Plaintiffs, the Complaint does not allege that the Organization Plaintiffs or their members have been subject to arrest or prosecution in St. Martin Parish or within the jurisdiction of the 16th JDC.  Nor do they allege that they were part of the protests that resulted the arrest of the Arrestee Plaintiffs.  Instead, the Organization Plaintiffs base standing on their state-wide and regional advocacy for environmental justice and the impact of La. R.S. 14:61 on their activities around the state. Specifically, plaintiffs RISE St. James and Sharon Lavigne (president of RISE St. James) allege that they have "organized marches, press conferences, and demonstrations, in the area and intend to continue to do so in St. James and elsewhere and…[along] the 85-mile stretch between Baton Rouge and New Orleans…."[52] These plaintiffs allege that they are "concerned that [La. R.S. 14:61] will impact their ability to march and protest in areas where there are numerous pipelines."[53] Plaintiff Joseph is also a member of RISE St. James. Joseph alleges that he is "concerned that the new law will make it more difficult to organize and participate in marches and events expressing opposition to" projects such as the Bayou Bridge Pipeline "given the proliferation of pipelines in the community."[54] Furthermore, with respect to RISE St. James, plaintiffs allege that "RISE is concerned that the law could be used against them to prevent or discourage their protest and public

---

[52] ECF No. 1 at 22.
[53] *Id.* at 27.
[54] *Id.* at ¶¶26-27.

events held to raise awareness about the dangers of the projects in the communities that will be affected by them."[55]

The standing allegations with respect to 350 New Orleans and the Louisiana Bucket Brigade similarly focus on their environmental advocacy programs in New Orleans, St. James Parish, and around the state.[56] 350 New Orleans alleges that its members "have engaged in acts of civil disobedience and have incurred misdemeanor charges when protesting near or on pipeline construction sites."[57] It further alleges that it desires "to continue protesting such projects as well as support communities where pipelines are likely present," but that its "work and political advocacy … are directly impacted by the amendment to La. R.S. 14:61 as it severely increases the punishment for presence on or near pipelines and chills their First Amendment expression of these views and deters others from joining their protests and demonstrations."[58] Accordingly, "[g]iven the vagueness of the critical infrastructure law and the arbitrary and discriminatory way in which it has already been enforced, members are concerned that they do not have a way to know what conduct is prohibited and where, and what could subject them to a possible prison sentence of five years, along with the possibility of steep fines."[59] Local members of 350 New Orleans allege that they "intend to continue to advocate for climate justice and advocate, educate about and peacefully and non-violently protest environmental injustices in Louisiana, including opposition

---

[55] *Id.* at ¶27.
[56] 350 New Orleans alleged that they "protest environmental injustices in Louisiana, including opposition to pipeline projects" and that they "desire to continue protesting such projects as well as support communities where pipelines are likely present." [ECF No. 1 at ¶28]. Louisiana Bucket Brigade alleges that it "works with communities in Louisiana located near oil refineries and chemical plants, which are predominately African-American communities" and that its members "frequently exercise their First Amendment Rights to advocate, educate about, and protest against environmental injustices, including pipeline projects." [*Id.* at ¶29]. It alleges that its work is "directly impacted and chilled by" La. R.S. 14:61.
[57] *Id.*
[58] *Id.*
[59] ECF No. 1 at ¶104.

to pipeline projects."[60] However, these plaintiffs allege that "[t]hey are concerned that similar non-violent speech and expression could subject them to felony charges and harsh and lengthy sentences of imprisonment," and that "this concern and the threat of felony prosecutions has had a chilling effect on their political speech and advocacy."[61]

The Louisiana Bucket Brigade alleges that its members and staff "frequently exercise their First Amendment rights."[62] Bucket Brigade staff "also reported live and frequently filmed activities in the area, interviews with experts, community members, and activists, at or near pipeline construction sites and have been at times threatened by pipeline construction workers and/or security personnel."[63] According to Plaintiffs, "[t]heir work and political advocacy are directly impacted and chilled by the amendment to La. R.S. 14:61 as it severely increases the punishment for remaining on or, possibly near, pipelines and its members are concerned about the possibility of arrests and felony charges, not only for their protest and expressive conduct but also for their work monitoring and documenting violations."[64]

An organization can assert standing in two ways. First, an organization can base its standing on the standing of its individual members ("representational standing").[65] For representational standing, an organization must show that "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members."[66] Second, an organization can base standing on an injury to

---

[60] ECF No. 1 at ¶102.
[61] ECF No. 1 at ¶103.
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237–38 (5th Cir. 2010).
[66] *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

that organization itself—such as incurring a non-litigation expense or curtailing its activities as a result of the challenged action ("organizational standing").[67] Organizational standing requires that an organization plaintiff establish the elements of Article III standing (injury, causation, and redressability) on its own.

The standing allegations pertaining to Plaintiffs 350 New Orleans and the Louisiana Bucket Bigrade satisfy the injury requirement for associational and organizational standing. Both plaintiffs point to specific examples where members were either charged with misdemeanors or were threatened when protesting near pipelines. Both organizations allege that they have organized protests at pipelines in the past and that the chilling effect caused by the criminal penalties of La. R.S. 14:61 will curtail their protest activities in the future. An Article III injury in fact does not require that a plaintiff "first expose himself to actual arrests or prosecution to be entitled to challenge a statute that he claims" is unconstitutional.[68] Nor is "actual arrest, prosecution, or other enforcement action…a prerequisite to challenging" an unconstitutional statute.[69] A plaintiff need only allege that they intend to engage in activities "arguably affected with a constitutional interest," that these activities are "arguably proscribed by the statue," and that there is "a credible threat of prosecution."[70] The allegations of 350 New Orleans and the Louisiana Bucket Brigade satisfy this standard.

The sufficiency of the injury-in-fact allegations pled by plaintiffs RISE St. James, Lavigne, and Joseph are less clear. Unlike the other Organization Plaintiffs, these plaintiffs allege broad protest activities that may include protests "in the vicinity" of pipelines that may qualify as a critical infrastructure under La. R.S. 14:61. Unlike the other Organization Plaintiffs, they do not

---

[67] *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (citing *City of Kyle, Tex.*, 626 F.3d at 237–38).
[68] *Steffel v. Thompson* 415 U.S. 452, 459 (1974).
[69] *Susan B. Anthony List*, 573 U.S.  at 158.
[70] *Id.* at 160.

allege specific examples of protests where their members were arrested or threatened with arrest; nor do they allege any facts regarding specific protest activities likely to result in prosecution under La. R.S. 14:61. Instead, they allege a "concern" that La. R.S. 14:61 may adversely impact their ability to organize protests. Article III standing requires more. In *Susan B. Anthony List*—a case cited by Plaintiffs—the petitioners challenged a statute that prohibited "false statements" about a political candidate.[71] In concluding that the petitioners had adequately demonstrated standing, the Supreme Court noted that the petitioners pled "specific statements that they intended to make in future election cycles" and that, based on specific allegations of prior enforcement activity, the threat of enforcement was imminent and not "wholly conjectural."[72] Here, in contrast, the broad, general injury allegations attributed to plaintiffs RISE St. James, Lavigne, and Joseph are wholly conjectural and hypothetical.[73]

Turning to causation and redressability, however, none of the Organization Plaintiffs have satisfied these requirements for Article III standing, even if they satisfy the injury in fact requirement. These requirements require not only that the Organization Plaintiffs demonstrate that they have been injured, but that their injuries resulted from the actions of the remaining defendants in the case—Duhé and Theriot.[74] The conduct attributed to these defendants is the arrest of  White Hat, Mejía, and Savage by Sheriff Theriot, and the chilling effect flowing from future prosecution

---

[71] 573 U.S. at 161-64

[72] *Id.* at 163.

[73] In their Opposition Memorandum, Plaintiffs refer to additional evidence that Plaintiffs Lavigne, RISE St. James, and the Louisiana Bucket Brigade discovered an old plantation slave cemetery and that a pipeline now runs through that cemetery. They contend that they fear prosecution under La. R.S. 14:61 if they conduct any activities at the site. These facts do not support Article III standing. First, Defendants are mounting a facial attack on the Complaint and these allegations have not been pled in the Complaint. Second, even assuming that the Court allowed an amendment to include these allegations, they do not support a creditable threat of prosecution because, as Plaintiffs concede, they have already obtained a temporary restraining order "allowing them to conduct a prayer ceremony to commemorate their ancestry on Juneteenth …." [ECF No. 71 at 11]. Finally, the cemetery and the protest activities at the cemetery do not appear to be located within the 16th JDC or St. Martin Parish. As explained below, this creates incurable causation and redress ability problems for the standing of these Plaintiffs.

[74] *Allen*, 468 U.S. at 751.

by Duhé in his capacity as the 16th JDC District Attorney. The causal link required for Article III standing breaks down at this point because the Organization Plaintiffs cannot "fairly trace" their alleged injuries to the actions of these defendants.[75] The Organization Plaintiffs do not allege that they were involved in the St. Martin Parish protests where the Arrestee Plaintiffs were taken into custody, or that any of their members were arrested during these protests. As far as the chilling effect from the enforcement of La. R.S. 14:61, the Organization Plaintiffs do not allege that they plan any protest activities in St. Martin Parish or, more broadly, within the boundaries of the 16th JDC (Iberia, St. Mary, and St. Martin Parishes). Instead, the injuries alleged by these plaintiffs pertain to unspecified protest activities around the state of Louisiana. Even when the Organization Plaintiffs tie their protest activities to specific locations, the activities are located *outside* St. Martin Parish and the boundaries of the 16th JDC—in St. Charles Parish or New Orleans, for example.[76] These allegations cannot support the causation requirement of standing because the enforcement and prosecutorial authority of defendants Theriot and Duhé is limited to St. Martin Parish and the 16th JDC, respectively.[77] Accordingly, their enforcement of La. R.S. 14:61 within the 16th JDC cannot have caused the injuries alleged by the Organization Plaintiffs with respect to protest activities outside St. Martin Parish and the 16th JDC.

The standing allegations of the Organization Plaintiffs also do not satisfy the "redressability" requirement for the same reasons. Injunctive relief against defendants Theriot and

---

[75] *Id.*

[76] ECF 1 at ¶¶27-28.

[77] With respect to a district attorney, Louisiana Constitution Article V, section 26 provides that except "as otherwise provided by this constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state *in his district*, be the representative of the state before the grand jury *in his district*, and be the legal advisor to the grand jury." (emphasis added). *See also Diaz v. Allstate Ins. Co.*, 433 So. 2d 699, 701–02 (La. 1983) ("A district attorney is a constitutional officer who serves in the judicial branch and exercises a portion of the sovereign power of the state within the district of his office."). With respect to the territorial authority of sheriffs, "Louisiana sheriffs are limited to the territorial boundaries of their respective parishes." *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 282 (5th Cir. 2002) (citing *Burge v. Parish of Saint Tammany,* 187 F.3d 452, 469 (5th Cir.1999)).

Duhé will not redress the Organizational Plaintiffs' injuries arising from prosecution—or threats of prosecution—under La. R.S. 14:61 in connection with their activities outside of St. Martin Parish and the 16th JDC. Any such injury would flow from other state officers who are not parties to the present case and would not be bound by injunctive relief entered against Theriot and Duhé. Nor will the grant of declaratory relief redress the injuries alleged by the Organization Plaintiffs. A request for declaratory relief does not alter or relax the requirements for standing even though a plaintiff may seek a broad declaration that a statute is unconstitutional.[78] Standing to seek a declaratory judgment turns on the same requirements for standing as injunctive relief, including allegations showing an injury caused by a named defendant.[79] Otherwise, a declaratory judgment on the constitutionality of a statute is nothing more than an impermissible advisory opinion.[80] Plaintiffs also cannot rely on the precedential or persuasive impact of a declaratory judgment to create standing absent a showing of causation and redressability with respect to the specific defendants that are before the court.[81]

---

[78] "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The court must ask (1) "whether an 'actual controversy' exists between the parties" in the case; (2) whether it has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* The statute's requirement of a "case of actual controversy" refers to an Article III case or controversy—in other words, the plaintiff must demonstrate Article III standing. *MedImmune*, 549 U.S. at 126.

[79] *Texas v. Travis Cty.*, 272 F. Supp. 3d 973, 978 (W.D. Tex. 2017) (quoting *BroadStar Wind Sys. Grp. Ltd. Liab. Co. v. Stephens*, 459 Fed.Appx. 351, 356 (5th Cir. 2012)); *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

[80] "[U]nder our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. . . . Constitutional judgments . . . are justified only out of the necessity of adjudicating rights in particular cases *between the litigants brought before the Court*." *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973) (citation omitted) (emphasis added).

[81] *C.E.G., Nova Health Systems v. Gandy*, 416 F.3d 1149, 1159-57 (10th Cir. 2005). In *Nova Health Systems*, the court held that the plaintiff lacked standing to assert declaratory judgment action against four state officials seeking a declaration that an Oklahoma statute that made an abortion provider liable for medical expenses for subsequent medical treatment was unconstitutional. The court held that the causation requirement of standing had not been met because the harm caused by the statute could not be traced to the actions of these four defendants even if the statute itself was unconstitutional. *Id.* According to the court, a judgment against the defendants on the constitutionality of the statue would only have precedential force and thus "overlooks the principle that it must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury…." *Id.*

In sum, the allegations in the Complaint do not demonstrate that the Organization Plaintiffs have Article III standing to assert claims against the remaining defendants. The Court, therefore, GRANTS Defendants' Motion to Dismiss the claims of the Organization Plaintiffs and the individual plaintiffs associated with those organizations (Lavigne and Joseph).[82]

4. <u>Standing of the Landowner Plaintiffs.</u>

The Landowners Plaintiffs present a different case. Unlike the Organization Plaintiffs, these plaintiffs satisfy the causation and redressability requirement for Article III standing. Their property is located in St. Martin Parish and falls within the boundaries of the 16th JDC and defendant Duhé's jurisdiction. To the extent that they allege any harm from enforcement of La. R.S. 14:61, that harm can be fairly traceable to Defendants. Moreover, their injury would be redressable by injunctive and declaratory relief against Theriot and Duhé.

The Landowner Plaintiffs must, however, also allege an injury that is "concrete, particularized, and actual or imminent."[83] The Landowner Plaintiffs allege that their families have owned property in St. Martin "for generations" and that they oppose the Bayou Bridge Pipeline because they are concerned about "the environment and health of communities that would be affected by the pipeline, damage to the Basin, effects on flood control, and coastal land loss in Louisiana, and the increasing threats posed by climate change."[84] They further allege that they "are concerned that the new law makes it unclear where they can be present on their property," and "are concerned that they and other landowners, and guests they allow onto their property, face the possibility of five years in prison if they run afoul of the law merely by being present on or in the

---

[82] The Court notes that, while the Organization Plaintiffs previously requested leave to amend their Complaint to assert a new claim against Attorney General Jeff Landry, they have not requested leave to amend their *standing* allegations, nor have they explained how an amendment could cure the defects in their standing allegations.
[83] *Clapper*, 568 U.S. at 409.
[84] ECF No. 1 at ¶23.

vicinity of the pipeline on their property with no clear direction as to why, when, who decides, and how the law is to be applied."[85]

Like the Organization Plaintiffs, the Landowner Plaintiffs must allege that they intend to engage in activities "arguably affected with a constitutional interest," that these activities are "arguably proscribed by the statue," and that there is "a credible threat of prosecution" to plead an Article III injury in fact.[86] Allegations that these plaintiffs oppose the Bayou Bridge Pipeline because of its impact on the environment, without more, does not satisfy this standard. The Landowner Plaintiffs do not allege that they participated in the protests that led to the arrest of White Hat, Savage, and Mejía, nor do they specifically allege that, but for the Amended Statute, they would participate in protests at the pipeline in the future. The Landowner Plaintiffs also cannot base their standing on alleged violations of the *Arrestee Plaintiffs*' First Amendment rights or the rights of other protestors. Prudential limitations on standing generally preclude a plaintiff from basing his or her standing on the rights of third parties.[87] These prudential limitations are often relaxed in First Amendment cases. For example, the overbreadth doctrine allows "[l]itigants ... to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."[88] Similarly, a plaintiff may base standing on the rights of a third-party if (1) they demonstrate a close relationship with the third party, and (2) the third-party is hindered from protecting its own rights.[89] With both

---

[85] *Id.* at ¶ 25.

[86] *Susan B. Anthony List*, 573 U.S. at 164.

[87] *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) ("prudential" limits on standing include "the general prohibition on a litigant's raising another person's legal rights ….") (quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

[88] *Broadrick*, 413 U.S. at 612.

[89] *See In re Grand Jury Subpoena Issued to Twitter, Inc*., No. 3:17-MC-40-M-BN, 2017 WL 9485553, at *3 (N.D. Tex. Nov. 7, 2017), report and recommendation adopted, No. 3:17-MC-40-M-BN, 2018 WL 2421867 (N.D. Tex. May 3, 2018) (citing *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984)).

exceptions, however, the plaintiff must still demonstrate an Article III injury in fact on its own. Here, the Landowner Plaintiffs have not pled facts showing a concrete, imminent injury to *their* First Amendment rights. Moreover, to the extent that they rely on violations to the First Amendment rights of the Arrestee Plaintiffs, these parties are plaintiffs in the case and can assert and protect their own rights.

The Landowner Plaintiffs come closest to pleading an Article III injury based on their allegation that La. R.S. 14:61 limits their use and enjoyment of their St. Martin Parish property. Even these allegations, however, still do not demonstrate a concrete and imminent injury. The Landowner Plaintiffs do not allege facts showing that their activities on the property have been limited in the past because of the challenged statute, nor do they show that future planned activities on the property will be curtailed as a result of the statute or that these activities could expose these plaintiffs to prosecution under La. R.S. 14:61. Indeed, the Landowner Plaintiffs' own allegations show that they did not reside on their St. Martin Parish property at the time this case was commenced—plaintiff Katherine Aaslestad resides in West Virginia, plaintiff Peter Aaslestad resides in Virginia, and plaintiffs Wright, Stevens, and Hernandez reside in New Mexico.[90] Accordingly, any injury to the Landowner Plaintiffs' property interests or threat of prosecution under La. R.S. 14:61 is wholly speculative.

In sum, the Landowner Plaintiffs have not demonstrated the required injury in fact for Article III standing. Defendants' motions to dismiss are therefore GRANTED with respect to the claims of plaintiffs Katherine Aaslestad, Peter Aaslestad, Wright, Stevens, and Hernandez.[91]

---

[90] ECF No. 1 at ¶23.

[91] Like the Organization Plaintiffs, the Landowner Plaintiffs have not requested leave to amend their standing allegations. Nor have they explained how they could cure the deficiencies in their standing allegations.

**B. Mootness as to Sheriff Theriot**.

Defendant Theriot argues that the claims against him are moot because he no longer holds the office of sheriff in St. Martin Parish. Mootness is another aspect of the "case or controversy" requirement for federal court jurisdiction under Article III. A case is "moot" when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[92] A moot case does not present a case or controversy and thus does not support federal court jurisdiction under Article III.[93]

The fact that Sheriff Theriot's tenure in office ended does not, however, moot the claims asserted against him because Plaintiffs have sued him in his *official capacity*.[94] In "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"—here, that office is the St. Martin Parish Sheriff's Office.[95] The claims against that office are still live because that office still has a role in enforcing the challenged statute in St. Martin Parish. Rule 25(d) of the Federal Rules of Civil Procedure provides the mechanism for addressing a case where, as here, an official sued in his or her official capacity leaves office:

> (d) PUBLIC OFFICERS; DEATH OR SEPARATION FROM OFFICE. An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Because Theriot was sued in his official capacity, his successor can and should be substituted in this proceeding under Rule 25(d). The Court will grant leave to substitute Theriot's successor upon proper motion. Accordingly, Theriot's Motion to Dismiss based on mootness is DENIED.

---

[92] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).
[93] *Id.*
[94] ECF No. 1 at ¶30.
[95] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

### C. Failure to State a Claim.

Finally, defendant Duhé moves to dismiss the claims of the Landowner Plaintiffs for failure to state a claim upon which relief can be granted. In support of this argument, he states only that "[t]he actual St. Martin Parish landowners were informed of their rights by Judge Comeaux's Judgment. The Judgment spells out the rights of Bayou Bridge Pipeline, LLC and plaintiff landowners with respect to the property…"[96] Duhé references a state court lawsuit between several of the Landowner Plaintiffs and the pipeline company that was filed during the construction of the pipeline; this lawsuit apparently addressed the respective property and right of way rights of those parties. While that lawsuit may be related to various disputes and protests which have occurred surrounding the pipeline, it does not address the First Amendment and Due Process claims that Plaintiffs seek to enforce in the current case. Duhé's Motion to Dismiss under Rule 12(b)(6) is therefore DENIED.

### IV.
### *YOUNGER* ABSTENTION

Both Defendants further argue that the Court must abstain from exercising jurisdiction under *Younger v. Harris*.[97] *Younger* abstention requires that federal courts "refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted."[98] The doctrine is grounded in federalism and prevents unwarranted interference with state court criminal proceedings.[99] *Younger* abstention generally requires that federal courts decline to exercise jurisdiction when: (1) a federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important

---

[96] ECF No. 64-1 at p. 22.
[97] 401 U.S. 37, 44 (1971).
[98] *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004).
[99] *Id.* (explaining that abstention under these circumstances promotes our federal system's "notion of 'comity,' that is, a proper respect for state functions").

interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise any constitutional challenges to his or her prosecution.[100]

Here, Defendants argue that the arrest of White Hat, Savage, and Mejía triggered an ongoing state judicial proceeding that satisfies the first requirement for *Younger* abstention. The Court disagrees. While the Arrestee Plaintiffs were taken into custody, they were subsequently released. There are no allegations that any charges have been presented to a grand jury, that the Arrestee Plaintiffs have been indicted or otherwise formally charged with violating the statute, or that defendant Duhé has even made a decision as to whether to prosecute these plaintiffs. In short, Defendants present no evidence of an *ongoing* state court criminal proceeding.

Even if the mere arrest and release of the Arrestee Plaintiffs sufficed for purposes of *Younger* abstention, Defendants have not satisfied the third requirement for abstention—that the Arrestee Plaintiffs have an adequate opportunity to raise their constitutional challenge to prosecution under La. R.S. 14:61 in an ongoing state proceeding. Absent any ongoing state court charges or prosecution, the Arrestee Plaintiffs lack a forum to challenge a prosecution under the Amended Statute. Instead, the Arrestee Plaintiffs will be subject to the mere threat of prosecution until the expiration of the statute of limitations. Until a charging decision is made and a prosecution is commenced, the Arrestee Plaintiffs contend that the fear of future arrest and prosecution under La. R.S. 14:61 will curtail the exercise of their rights under the First Amendment. In sum, Defendants have not satisfied the first and third requirements for *Younger* abstention. The Court therefore DENIES Defendants' motions to the extent that they seek dismissal based on *Younger* abstention.

---

[100] *Id.*

**V.**

**CONCLUSION**

For the foregoing reasons, the Re-urged Motion to Dismiss filed by Theriot [ECF No. 62] and the Motion for Reconsideration and Motion to Dismiss filed by Duhé [ECF No. 64] are GRANTED in part and DENIED in part. Both Motions are GRANTED with respect to the Organization Plaintiffs and the Landowner Plaintiffs. Accordingly, the claims of plaintiffs Katherine Aaslestad, Peter Aaslestad, Theda Larson Wright, Alberta Larson Stevens, Judith Larson Hernandez, RISE St. James, 350 New Orleans, the Louisiana Bucket Brigade, Sharon Lavigne, and Pastor Harry Joseph are DISMISSED for lack of standing. In all other respects, the motions are DENIED.

THUS DONE in Chambers on this 5th day of May, 2021.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE